# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

TINA MARIE SEARS,

        Plaintiff,

vs.                                          CIV 17-0391 JB/KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING IN PART THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition, filed February 21, 2018 (Doc. 26)("PFRD"). On March 7, 2018, Plaintiff Tina Marie Sears filed the Objection to Proposed Findings and Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1), filed March 7, 2018 (Doc. 27)("Objections"). The primary issues are: (i) whether substantial evidence supports Administrative Law Judge Lillian Richter's Residual Functioning Capacity ("RFC") finding that the claimant could continue to perform work in the national economy; and (ii) whether the Court must remand the case to ALJ Richter so that she can determine, in the first instance, whether 50,000 national jobs is a significant number of jobs in the national economy. The Court concludes that there is substantial evidence to support ALJ Richter's RFC conclusion, because she accounted for Sears' right knee pain in formulating the RFC. The Court will, however, remand the case to ALJ Richter, because a reasonable factfinder could determine that 50,000 jobs is not a significant number of national jobs. The Court, accordingly, overrules Sears' Objection in part and sustains

it in part, grants Plaintiff's Motion to Reverse or Remand Administrative Agency Decision and Memorandum Brief at 1-26, filed August 22, 2017 (Doc. 16)("Motion"), in part and denied it in part, and adopts the PFRD in part.

## FACTUAL BACKGROUND

On March 26, 2015, Sears filed an application with the Social Security Administration for Disability Insurance Benefits ("DIB"), alleging a disability beginning on September 1, 2012, because of back problems, chronic obstructive pulmonary disease, thyroid issues, and depression. <u>See</u> Claimant Information at 1 (dated August 7, 2015), filed June 27, 2017 (Doc. 9-1)(A.R.99)("August 2015 CI Info.").[1] She later amended the onset date to December 17, 2013, to correspond with an onset of right knee pain. <u>See</u> Decision at 1 (A.R.15); Social Security Administration Office of Disability Adjudication and Review Transcript at 64-65 ("SSA Tr.")(A.R.95-96); August 2015 CI Info. at 1 (A.R.99). Sears' application was initially denied on August 12, 2015, and denied again at the reconsideration level on January 26, 2016. <u>See</u> Disability Determination and Transmittal at 1 (dated March 26, 2015)(A.R.98); August 2015 CI Info at 1-11 (A.R.99-109); Disability Determination and Transmittal at 1 (A.R.110); Claimant Information at 1-11 (dated January 26, 2016)(A.R.111-121).

ALJ Richter held a hearing on October 4, 2016. SSA Tr. at 1-66 (A.R.32-97). At the hearing, Justin Raines represented Sears who continues to represent her in this appeal. <u>See</u> SSA Tr. at 1 (A.R.32). <u>See</u> <u>also</u> Complaint for Judicial Review of Disallowance of Social Security Benefits at 3, filed March 31, 2017 (Doc. 1)("Complaint"). On November 1, 2016, ALJ Richter

---

[1]The Court cites to documents in the administrative record with "A.R." followed by the Administrative Record's pagination as opposed to the document's pagination. In subsequent citations to the Administrative record, the Court omits (i) the CM/ECF number; and (ii) that the Administrative Record was filed on June 27, 2017.

issued a decision unfavorable to Sears.  See Notice of Decision -- Unfavorable at 1-3 (A.R.12-14); Decision at 1-12 (A.R. 15-26); List of Exhibits at 1-5 (A.R.27-31).  In her report, she concluded that, through the date last insured, the medical evidence established that Sears has the following severe impairments: "degenerative disc disease[2] of the lumbar/cervical spine, chronic pain syndrome, COPD, patellofemoral chondromalacia[3] of the right knee, lateral condyle contusion of the right knee,[4] obesity, depression, vertigo, and insomnia."  Decision at 4 (A.R.18).  ALJ Richter concluded, however, that Sears did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Decision at 4 (A.R.18).  ALJ Richter concluded that Sears is capable of performing the jobs of Conveyor-line Bakery Worker and Hand Presser.  See Decision at 10-11 (A.R.24-25).  On February 28, 2017, the Appeals Council issued its decision denying Sears' request for review and upholding the ALJ's final decision.  See Notice of Appeals Council Action at 1-5 (A.R.1-5).

---

[2]Degenerative disc disease occurs when normal aging changes to your spinal discs cause pain.  See What is Degenerative Disk Disease?, WebMD at 1 (last accessed on April 23, 2018) available at https://www.webmd.com/back-pain/degenerative-disk-disease-overview#1.

[3]Patellofemoral chondromalacia, also known as chondromalacia patellae or "runner's knee" is a condition where the cartilage on the undersurface of a kneecap deteriorates and softens, causing pain.  Chondromalacia, Healthline at 1 (last accessed on April 23, 2018) available at https://www.healthline.com/health/chondromalacia-patella#modal-close.

[4]This is a fancy phrase for a deep knee bruise.  See Lateral Condyle of Femur, Wikipedia at 1 (last accessed on April 23, 2018) available at https://en.wikipedia.org/wiki/Lateral_condyle_of_femur; Bruise, Wikipedia at 1 (last accessed on April 23, 2018) available at https://en.wikipedia.org/wiki/Bruise ("A contusion, commonly known as a bruise, is a type of hematoma of tissue in which capillaries and sometimes venules are damaged by trauma, allowing blood to seep, hemorrhage, or extravasate into the surrounding interstitial tissues.")(citation omitted).

## PROCEDURAL BACKGROUND

On March 31, 2017, Sears filed her Complaint seeking judicial review of the ALJ's decision. <u>See</u> Complaint ¶ 1, at 1. Sears asks the Court to address a number of issues on review. <u>See</u> Motion at 1-26. In the PFRD, the Honorable Judge Karen Molzen, United States Magistrate Judge, concluded that ALJ Richter did not commit reversible error and recommended that the Court deny the Motion. <u>See</u> PFRD at 27.

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition. <u>See</u> Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . ."). Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Finally, when resolving objections to a Magistrate Judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

"'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" United States v. One Parcel of Real Prop., with Bldgs., Appurtenances, Improvements, & Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 40, 147 (1985)).  As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act,[5] including judicial efficiency." One Parcel, 73 F.3d at 1059.

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  One Parcel, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'"  One Parcel, 73 F.3d at 1059 (citations omitted).  In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).  See United States v. Garfinkle, 261 F.3d 1030, 1031 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").  In an unpublished opinion, the Tenth Circuit stated that "the district court

---

[5]28 U.S.C. §§ 631-39.

correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007).[6]

In One Parcel, the Tenth Circuit, in accord with other courts of appeals, expanded the waiver rule to cover objections that are timely but too general. See One Parcel, 73 F.3d at 1060. The Supreme Court of the United States -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. See S. Rep. No. 94-625, pp. 9–10 (1976)(hereafter Senate Report); H.R. Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report). There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate. Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or *ruling* on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." See Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st

---

[6]Pevehouse v. Scibana is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Pevehouse v. Scibana, Evans v. Colvin, Bainbridge v. Colvin, Rogers v. Astrue, and Stokes v. Astrue have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

- 6 -

Sess., 24 (1975)(emphasis added)(hereafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. *See id.*, at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order."). The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. *See* Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review. There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150–52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")(citations omitted)). Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule. See 73 F.3d at

1060-61 (citing cases from other Courts of Appeals where district courts elected to address merits despite potential application of waiver rule, but Courts of Appeals opted to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's proposed findings and recommendation, on "dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b) and citing Mathews v. Weber, 423 U.S. 261, 275 (1976)). The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate's report. In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995). "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the Magistrate Judge's report "based upon conflicting evidence or testimony." Gee v. Estes, 829 F.2d at 1009. On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order." Ocelot Oil Corp. v. Sparro Indus., 847 F.2d 1458, 1464 (10th Cir. 1988). A district court need not, however, "make any specific findings; the district court must

merely conduct a *de novo* review of the record." Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000). "[T]he district court is presumed to know that de novo review is required. Consequently, a brief order expressly stating the court conducted de novo review is sufficient." Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583–84). "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise." Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993). The Tenth Circuit has held that a district court properly conducted a de novo review of a party's evidentiary objections when the district court's "terse" order contained one sentence for each of the party's "substantive claims" and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion." Garcia v. City of Albuquerque, 232 F.3d at 766. The Tenth Circuit has explained that brief district court orders that "merely repeat[] the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis. We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate," 28 U.S.C. § 636(b)(1).  See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).

Where no party objects to the Magistrate Judge's proposed findings and recommended disposition, the Court has, as a matter of course and in the interests of justice, reviewed the Magistrate Judge's recommendations.  In Pablo v. Soc. Sec. Admin., 2013 WL 1010401 (D.N.M. Feb. 27, 2013)(Browning, J.), the plaintiff failed to respond to the Magistrate Judge's proposed findings and recommended disposition, and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review.  See 2013 WL 1010401, at *1, *4.  The Court generally does not, however, "review the PF&RD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."  Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.  The Court, thus, does not determine independently what it would do if the issues had come before the Court first, when there is no objection, but rather adopts the proposed findings and recommended disposition where "'the Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.'"  Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *3 (footnote and internal brackets omitted)(quoting Workheiser v. City of Clovis, 2012 WL 6846401, at *3 (D.N.M. Dec. 28, 2012)(Browning, J.).  See Alexandre v. Astrue, 2013 WL 1010439, at *4 (D.N.M. Feb. 27, 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations . . . to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion. The Court determines that they are not, and will

therefore adopt the PF&RD."); <u>Trujillo v. Soc. Sec. Admin.</u>, 2013 WL 1009050, at *5 (D.N.M. Feb. 28, 2013)(Browning, J.)(adopting the proposed findings and conclusions, and noting that "[t]he Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendation to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not"). This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review. Accordingly, the Court considers this standard of review appropriate. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate."). The Court is reluctant to have no review at all if its name is signed at the bottom of the order and opinion adopting the Magistrate Judge's proposed findings and recommendations.

## LAW REGARDING REVIEW OF DISABILITY DECISIONS

Congress defines "disability" under the Social Security Act, 42 U.S.C. §§ 301-1397mm, in relevant part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To qualify for disability insurance benefits, a claimant must establish a severe

physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. See 42 U.S.C. § 423(d)(1)(A). See also Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993). As the Tenth Circuit has explained:

> "The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled." Hackett [v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)]. "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Id. Step one requires the claimant to demonstrate "that he is not presently engaged in substantial gainful activity." Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). At step two, the claimant must show "that he has a medically severe impairment or combination of impairments." Id. At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits. Williams [v. Bowen], 844 F.2d 748, 751 (10th Cir. 1988)].

Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(Briscoe, J.). By "listed impairment," the Tenth Circuit refers to impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(a)(4)(iii); id. at § 404.1520(d). The Tenth Circuit continues:

> If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show "that the impairment or combination of impairments prevents him from performing his past work." Grogan [v. Barnhart], 399 F.3d at 1261.
>
> "If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given her age, education, and work experience." Hackett [v. Barnhart], 395 F.3d at 1171. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams [v. Bowen], 844 F.2d at 750.

Lax v. Astrue, 489 F.3d at 1084. Further, disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See 20 C.F.R. § 404.1520.

42 U.S.C. § 405(g) and caselaw limits the scope of judicial review of the Commissioner's determination to two inquiries: first, whether substantial evidence supports the factual findings; and, second, whether the correct legal standards were applied. See Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. See Hamlin v. Barnhart, 365 F.3d at 1214. The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" Hamlin v. Barnhart, 365 F.3d at 1214 (quoting Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994)). The court "may neither reweigh the evidence nor substitute" its opinion for that of the Commissioner's. Hamlin v. Barnhart, 365 F.3d at 1214.

## ANALYSIS

Sears' objections are two-fold. First, she argues that ALJ Richter prejudices her when ALJ Richter failed to consider the onset of right knee pain as it relates to her date last insured. See Objections at 1-4. Second, Sears contends that Magistrate Judge Molzen did not properly apply Tenth Circuit precedent to determine whether there exists a significant number of jobs in the national economy that Sears can perform. See Objections at 4-9. The Court, having reviewed the record de novo, concludes that it should overrule Sears' Objection in part and sustain it in part and it will adopt the PFRD in part. The Court concludes that the Tenth Circuit's harmless error standard of review requires the Court to remand the case to ALJ Richter to determine whether 50,000 jobs is significant. Thus, the Court will also grant the Motion in part and deny it in part.

# I.     SUBSTANTIAL EVIDENCE SUPPORTS THE RFC FINDING.

Sears first argues that an error in ALJ Richter's opinion about the onset date of Sears' right knee pain has resulted in prejudice, because ALJ Richter did not fully account for the impairment in Sears' RFC.

In her initial DIB application, Sears alleges an onset date for her right knee pain of September 1, 2012.  See August 2015 CI Info. at 1 (A.R.99).  During her oral hearing with ALJ Richter, Sears asked to amend the onset date to December 17, 2013, because she first reported her injury to medical providers in early 2014.  See Motion at 12-13; Decision at 1 (A.R.15); SSA Tr. at 64-65 (A.R.95-96).  ALJ Richter granted that request.  Decision at 1 (A.R.15); SSA Tr. at 64-65 (A.R.95-96).  The ALJ ultimately assigned the following RFC:

> [Sears] has the [RFC] to occasionally lift 20 pounds and . . . frequently lift or carry up to 10 pounds.  [She] is able to stand and walk for approximately six hours in an eight-hour workday and sit for six hours in an eight-hour workday.  She can occasionally stoop, kneel, crouch, crawl and climb ramps or stairs but can never balance or climb ladders, ropes or scaffolds.  [She] cannot be exposed to unprotected heights, moving mechanical parts, dust, odors, fumes or pulmonary irritants.  She is limited to work performed primarily at the work station in a routine environment with few changes in the routine work setting.  She can have occasional interaction with supervisors, coworkers and members of the public.  [The ALJ found] that this is a limited range of work contained in the light exertional level as defined by 20 [C.F.R. §§] 404.1567 [and] 416.967 and SSR 83-10.

Decision at 6 (A.R.20).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  Hendron v. Colvin, 767 F.3d 951, 954 (10th Cir. 2014)(quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  ALJ Richter's assessment includes a discussion of all relevant records concerning Sears' right knee pain, including five

medical visits and Sears' hearing testimony. See Decision at 8-10 (A.R.22-24)(citing Progress Notes: Joanne Cardinal, MD at 1-2 (A.R.394-95); Progress Notes: Michelle T. Pahl at 3 (A.R.401); Southwest Bone and Joint Institute notes at 2 (A.R.434); Southwest Bone and Joint Institute notes at 1 (A.R.436), Southwest Bone & Joint Institute notes at 1 (A.R.437).

While ALJ Richter adequately "outlined the evidence of Plaintiff's right knee pain," she stated that the impairment began "*after the date last insured*," which is a misstatement of the facts. PFRD at 7 (quoting Decision at 10 (A.R.24))(emphasis in PFRD). Despite her misunderstanding of the onset date, ALJ Richter decided that, "because there is a slim possibility that the bone-marrow edema identified on a later MRI existed into the insured period," it was appropriate to place limits on Sears' RFC in the areas of stooping, kneeling, crouching, and crawling. Decision at 10 (A.R.24). Thus, ALJ Richter accounted for Sears' right knee pain in formulating the RFC. Magistrate Judge Molzen concluded that ALJ Richter's misstatement does not provide grounds for reversal, because ALJ Richter examined the relevant evidence and included sufficient limitations in the RFC. See PFRD at 7. Moreover, Magistrate Judge Molzen determined that Sears "has not shown that the ALJ's error has resulted in any prejudice, because Plaintiff has not demonstrated that the ALJ should have included further limitations due to her right knee pain." PFRD at 7 (citing Keyes-Zachary, 695 F.3d at 1162-63 (concluding that an "alleged error in the ALJ's decision did not . . . prejudice [plaintiff], because giving greater weight to [a physician's] opinion would not have helped her")).

Sears now contends that reversal is warranted for several reasons. First, she argues that the PFRD "does not address why the ALJ stated that there was only 'a slim possibility' that the bone marrow edema 'existed into the insured period,' when the MRI was taken in 2014, during the insured period." Objections at 2-3 (citing Decision at 10 (A.R.24); PFRD at 7). As

- 15 -

Magistrate Judge Molzen concluded, however, ALJ Richter accounted for Sears' bone marrow edema by including relevant limitations in Sears' RFC.  See PFRD at 11.  ALJ Richter explicitly referenced Sears' bone marrow edema in limiting her abilities to stoop, kneel, crouch, and crawl. See Administrative Record at 24.

Sears next notes that "the ALJ did not adopt any limitations that resulted from the patellar chondromalacia -- only from the bone-marrow edema."  Objections at 3 (citing Decision at 9-10 (A.R.23-24);  Southwest Bone & Joint Institute notes at 1 (A.R.437)).  Related to this argument, Sears believes that "[t]he ALJ . . . failed to note the specific MRI finding that there was 'severe articular cartilage thinning of the (right) lateral patellar facet with presence of mild subchondral edema.'"  Objections at 3 (citing Southwest Bone & Joint Institute notes at 1 (A.R.436)).  Sears also discusses the symptoms and complaints of right knee pain to which she testified, and contends that her symptoms are "consistent with patellofemoral chondromalacia, but the ALJ failed to provide any limitations resulting from it."  Objections at 3.

While Sears is correct that ALJ Richter specifically referenced bone marrow edema in discussing certain limitations incorporated into the RFC, ALJ Richter did not ignore Sears' patellar chondromalacia.  Sears' reference to "cartilage thinning" is from Dr. Nguyen's January 10, 2014 MRI findings, which ALJ Richter discussed.  See Decision at 9 (A.R.23).  ALJ Richter noted that "an MRI proved no tear existed while simultaneously finding bone-marrow edema and cartilage thinning of the lateral patellar facet."  Decision at 9 (A.R. 23)(citing Southwest Bone & joint Institute at 1 (A.R.436)).  ALJ Richter listed patellofemoral chondromalacia of the right knee as a severe impairment at Step Two.  See Decision at 4 (A.R.18).  ALJ Richter also adequately discussed Sears' hearing testimony, including her symptoms and complaints regarding her right knee pain.  See Decision at 7 (A.R.21).  Specifically, ALJ Richter notes that

Sears "alleged . . . right-knee pain secondary to bone-marrow edema." Decision at 7 (A.R.21). Sears "considered stooping and twisting particularly painful and alleged difficulty arising from the floor because of knee pain. Steroid injections have helped this for 1-2 months at a time." Decision at 7 (A.R.21). Sears "estimated that the combination of musculoskeletal impairments and COPD limited her to less than an hour of standing/walking at a time and a need to frequently alternate with sitting." Decision at 7 (A.R.21). The Court concludes that ALJ Richter sufficiently considered Sears' patellofemoral chondromalacia and substantial evidence supports the RFC determination. It appears that Sears is asking the Court to reweigh the evidence, which is improper. The Court will overrule Sears' Objections on this issue.

## II.   ALJ RICHTER'S STEP-FIVE FINDING ERROR IS NOT HARMLESS, SO THE COURT REMANDS THE CASE.

Sears next argues that Magistrate Judge Molzen did not properly apply Tenth Circuit precedent in determining whether there is a significant number of jobs available for Sears to perform. See Objections at 4. In the PFRD, Magistrate Judge Molzen concludes that ALJ Richter erroneously included Bakery Worker as a job which Sears can perform. See PFRD at 22.[7] Consequently, only one position remains for Sears, that of Hand Presser. See PFRD at 22-23. Sears argues in relevant part that, "because the [vocational expert] identified only 50,000 jobs nationally for the Hand Presser position, this case requires remand so that the ALJ may perform an analysis of the Trimiar factors to determine whether the number of positions rises to the significant level as defined in 42 U.S.C. § 423(d)(2)(A)." PFRD at 23 (citing Plaintiff's Reply at 11-12, filed November 7, 2017 (Doc. 24)("Reply"); Trimiar v. Sullivan, 966 F.2d 1326 (10th Cir. 1992)("Trimiar")).

---

[7]No one challenges this analysis, and the Court agrees with it.

Magistrate Judge Molzen rejects Sears' argument on two grounds. First, Magistrate Judge Molzen concludes that the <u>Trimiar</u> analysis is necessary only when analyzing the number of jobs available regionally, so remand when only national jobs are at issue is not needed here. <u>See</u> PFRD at 23-24. According to Magistrate Judge Molzen, because the <u>Trimiar</u> factors are focused on the availability of local job opportunities, applying them to the number of national jobs available "would confuse the issues." PFRD at 23-24. Sears contends that Magistrate Judge Molzen erred in that conclusion, because, in <u>Raymond v. Astrue</u>, 621 F.3d 1269 (10th Cir. 2009)(Gorsuch, J.)("<u>Raymond</u>"), the Tenth Circuit explained that the <u>Trimiar</u> Court focused

> "on jobs in the regional economy because the vocational expert in that case testified *only* to the number of available jobs in the *regional* economy. . . . *Trimiar* does not hold that only regional jobs are relevant or that a court must engage in a factoral analysis <u>when the number of jobs relevant available is, as here (1.34 million)</u>, much larger."

Objections at 7-8 (quoting <u>Raymond</u>, 621 F.3d at 1274 n.2)(italics in <u>Raymond</u>; underlining in Objections; emphasis omitted in Objections).

The Court concludes that the PFRD's conclusion is correct. Contrary to Sears' contention, the quoted portion of <u>Raymond</u> supports Magistrate Judge Molzen's conclusion that the <u>Trimiar</u> factors are best applied when regional jobs are at issue. <u>See</u> <u>Raymond</u> 621 F.3d at 1274 n.2 ("*Trimiar* does *not* hold that . . . a court must engage in a factoral analysis when the number of jobs relevant available is, as here, (1.34 million), much larger.")(emphasis in original). The quoted language suggests that, when the Court or the ALJ considers the number of national jobs -- typically a much large number than the number of regional jobs -- the factoral analysis is superfluous. <u>See</u> <u>Evans v. Colvin</u>, 640 F. App'x 731, 736 n.4 (10th Cir. 2016)(unpublished)(noting that <u>Raymond</u> suggests that <u>Trimiar</u> applies only when there is an "extremely low number of jobs"). Indeed, the <u>Trimiar</u> Court mandated its factors when 650 to

900 jobs were at issue, whereas here, 50,000 jobs are at issue. See Trimiar, 966 F.3d at 1330. Moreover, some of the Trimiar factors' purposes support Magistrate Judge Molzen's conclusion. For example, one of the factors is "the distance claimant is capable of travelling to engage in the assigned work." Trimiar, 966 F.3d at 1330. While such a factor makes sense when an ALJ is attempting to determine what regional jobs are realistically available to the claimant, the distance to that job on a national scale does not help the ALJ determine whether the claimant can, as a practical matter, travel to that job. Furthermore, the factor, if applied on a national scale, would almost always weigh towards finding that the Social Security claimant is disabled.

Sears' second, and main, contention is that the Court must remand the case, because ALJ Richter, in the first instance, did not consider whether 50,000 jobs available is a "significant number." Objections at 6. According to Sears, because ALJ Richter did not make a determination, the Court must apply the more rigorous harmless error standard rather than the typical "substantial evidence" standard. Objections to the PFRD at 5-6. Sears contends that, under that more rigorous standard, the Court must remand the case, because a reasonable factfinder could conclude that 50,000 national jobs is not a significant number. See Objections at 6-7 (citing e.g., Chaves v. Barnhart, 126 F. App'x 434, 436 (10th Cir. 2005)(unpublished)).

Magistrate Judge Molzen agrees with Sears that the standard governing the inquiry is harmless error, but she determines that 50,000 national jobs passes muster under that standard. See PFRD at 24-27. She comes to that conclusion after surveying other courts grappling with the same issue, and reasons that the general consensus dictates that 50,000 is a significant number. See PFRD at 25 (citing Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014)("25,000 jobs meets the statutory standard."); Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997)(stating that 30,000 jobs is a significant number in the national economy); Rogers v.

Astrue, 312 F. App'x 138, 142 (10th Cir. 2009)(unpublished)(implicitly concluding that 11,000 jobs is a significant number); Jackson v. Colvin, 2014 WL 5504755, at *9 (D. Colo. Oct. 31, 2014)(Mix, M.J.)(concluding that 26,000 jobs nationally is a significant number); King v. Berryhill, No. 16-1147, Mem. Op. & Order at 25-29 (D.N.M. Feb. 12, 2018)(Molzen, M.J.)(holding that 47,500 jobs is significant). In so concluding, Magistrate Judge Molzen notes that she is mindful of the Tenth Circuit's admonition that ALJs should most often be afforded the opportunity to determine, in the first instance, whether the number of jobs available is significant, but she concludes that the Tenth Circuit's "powerful warning" came in the context of evaluating regional jobs available and not national jobs. PFRD at 26. See id. at 27 n.8 (noting that the Honorable Sam A. Crow, Senior United States District Judge for the United States District Court for the District of Colorado, had remanded cases to let ALJs determine whether 30,000 and 12,000 nationally available jobs are significant, but distinguished those cases, concluding that Judge Crow relied too heavily on Trimiar in his analysis).

The Court agrees with Sears and Magistrate Molzen that the harmless error standard governs the inquiry, because the ALJ did not make a determination whether 50,000 jobs are a significant number. Thus, the operative question is whether the Court can "confidently say no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Allen v. Barnhart, 357 F.3d at 1144. See Bainbridge v. Colvin, 618 F. App'x 384, 391 (10th Cir. 2015)(unpublished). The Court disagrees, however, with Magistrate Judge Molzen that no reasonable administrative factfinder could determine that 50,000 jobs is a significant number. The statute's language signals that there are circumstances where an ALJ could reasonably conclude that 50,000 is a significant number, so the Court concludes that remand is appropriate.

The Court begins its analysis with Tenth Circuit precedent. The Tenth Circuit has yet to establish the lower boundary of what counts as significant for harmless error purposes. See Evans v. Colvin, 640 F. App'x at 736.

> As *Trimiar* pointed out, there is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen* [v. Barnhart] that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes* [v. Astrue, 274 F. App'x 675 (10th Cir 2008)(unpublished)]) to be sufficient so far for application of harmless error.

Evans v. Colvin, 640 F. App'x at 736. With the range between 100 and 152,000, this case -- with 50,000 jobs at issue -- falls in the Tenth Circuit's no-man's land.

Before proceeding, the Court notes that, in Chavez v. Barnhart, 126 F. App'x 434 (10th Cir. 2005)(unpublished), the Tenth Circuit considered whether 49,957 national jobs "but only 199" regional jobs were significant enough to foreclose the need for remand. 126 F. App'x at 436. The Tenth Circuit concluded that remand was necessary, but its analysis focused exclusively on the relatively few number of regional jobs:

> This [harmless error] rule is particularly appropriate where, as here and in *Allen*, the number of jobs available in the region is relatively small -- 199 here, 100 in *Allen*. *See Allen*, 357 F.3d at 1144. Accordingly, we decline the Commissioner's invitation to find harmless error on the ground that the number of jobs is significant as a matter of law.

Chavez v. Barnhart, 126 F. App'x at 436. Subsequent Tenth Circuit caselaw agrees that the Tenth Circuit's Chavez v. Barnhart conclusion rests on the number of regional jobs and not national jobs. See Evans v. Colvin, 640 F. App'x at 736 ("Also, a close reading of *Chavez* suggests it was the extremely low number of jobs in Oklahoma (199) that drove our reluctance to find harmless error."). Based on Chavez v. Barnhart's language, and subsequent caselaw suggesting that Chavez v. Barnhart bears only on whether remand is appropriate when

considering the regional number of jobs,[8] the Court concludes that <u>Chavez v. Barnhart</u> does not

provide a helpful guide to the Court's problem here, which is whether 50,000 national jobs are,

as a matter of law, significant. The Court also concludes that <u>Evans v. Colvin</u>, in which 18,831

national jobs were at issue, also does not provide the Court with a helpful guidepost, because the

Tenth Circuit's conclusion in that case was only that the social security commissioner was

"substantially justified" in arguing before the district court that harmless error applied. <u>Evans v.</u>

<u>Colvin</u>, 640 F. App'x at 736.[9]

Thus, the Court tackles this question without clear guidance from the Tenth Circuit. The

caselaw appears clear that if ALJ Richter had made a determination that 50,000 was a significant

number of jobs, the Court would be justified in affirming ALJ Richter's decision. <u>See</u>, <u>e.g.</u>,

<u>Gutierrez v. Comm. of Social Sec.</u>, 740 F.3d 519, 528-29 (9th Cir. 2014)(noting that it was "a

close call," but affirming an ALJ's determination that 25,000 national jobs is a significant

number); <u>Rogers v. Astrue</u>, 312 F. App'x 138, 142 (10th Cir. 2009)(affirming an ALJ's

conclusion that 11,000 national jobs is a significant number); <u>Long v. Chater</u>, 108 F.3d 185, 188

(8th Cir. 1997)(affirming an ALJ's determination that 30,000 national jobs is a significant

number); <u>King v. Berryhill</u>, No. 16-1147, Mem. Op. & Order, at 24-29 (D.N.M. February 12,

2018)(Doc. 26)(Molzen, M.J.)(affirming an ALJ's determination that 47,500 jobs is a significant

number); <u>Jackson v. Colvin</u>, 2014 WL 5504755, at *9 (D. Colo. October 31, 2014)(Mix,

---

[8]The Court also notes that subsequent binding Tenth Circuit caselaw casts doubt on <u>Chavez v. Barnhart</u>'s regional jobs analysis as well. <u>See Raymond</u>, 621 F.3d at 1274 ("[C]ontrolling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy.").

[9]The district court determined that, with 18,831 national jobs and 272 regional jobs at issue, it was not harmless error and remanded the case to the ALJ. <u>See Evans v. Colvin</u>, 2015 WL 3814530, at *2 (D. Colo. June 18, 2015)(Jackson, J.).

M.J.)(affirming an ALJ's decision that 26,000 national jobs is a significant number). The cases just cited are the cases upon which Magistrate Judge Molzen relied in the PFRD to conclude that 50,000 national jobs is a significant number and that remand in this case is inappropriate. The Court disagrees that these cases are dispositive, because all of them employ a different standard of review -- whether there was substantial evidence to support the ALJ's determination. In those cases, the courts were, in effect, saying that there is enough record evidence to determine that the ALJ got it right. In contrast, here, to conclude that ALJ Richter's error was harmless, the Court would be saying that any ALJ who determined that 50,000 national jobs is not significant must, as a matter of law, be wrong.[10]

The Court is not willing to make that sort of sweeping pronouncement about 50,000 national jobs. See Vyskocil v. Astrue, 2012 WL 2370200, at *3-4 (D. Kan. June 22, 2012)(Lungstrom, J.)(concluding that remand was appropriate, because an ALJ had not considered whether 55,000 national jobs and 450 regional jobs were a significant number of jobs); Ladenburger v. Colvin, 2017 WL 1352274, at *2-5 (D. Colo. April 13, 2017)(Moore, J.)(concluding that remand to the ALJ was needed, because the ALJ had not determined whether 44,000 national jobs were significant); Ferguson v. Berryhill, 2017 WL 2536436, at *4-6 (D. Kan. June 17, 2017)(Crow, J.)(concluding that remand was proper when an ALJ had not considered whether 39,000 jobs were significant).[11]    As of April, 2018, there are, at least,

---

[10]The Court's subsequent conclusion that remand is appropriate does not cast doubt on Magistrate Judge Molzen's King v. Berryhill determination or any of the above cited cases' holdings. Indeed, the Court agrees that, if the substantial evidence standard applied here, there would be no need to remand the case.

[11]Magistrate Judge Molzen distinguished Ferguson v. Berryhill, and another opinion that Judge Crow authored, Pemberton v. Berryhill, arguing that those opinions relied too heavily on Trimiar. See PFRD at 27 n.8. The Court has agreed with Magistrate Judge Molzen that an ALJ

155,178,000 jobs in the United States.  <u>See</u> <u>Economic News Release</u>, Bureau of Labor Statistics

at 1 (April 2018)(last accessed April 25, 2018), available at https://www.bls.gov/news.release/

empsit.t01.htm.  The appropriate inquiry does not turn on whether "such work exists in the

immediate area in which he lives."  42 U.S.C. § 423(c)(2)(A).  Rather, the proper question

focuses on whether such work "exists" in the "national economy."  42 U.S.C. § 423 (c)(2)(A).

Whether "work . . . exists in the national economy" means "work which exists in significant

---

or a court does not need to weigh the <u>Trimiar</u> factors on the record when considering only national job numbers.  Nevertheless, the Court declines to distinguish Judge Crow's cases as Magistrate Judge Molzen did, because the Court concludes that Judge Crow's rulings rest on the harmless error standard and not <u>Trimiar</u>.  <u>See</u> <u>Pemberton v. Berryhill</u>, 2017 WL 1492934, at *11; <u>Ferguson v. Berryhill</u>, 2017 WL 2536436, at *6.

Moreover, even if Judge Crow relied heavily on <u>Trimiar</u>, such reliance would not preclude the Court from concluding that remand is appropriate here.  The <u>Trimiar</u> factors and the harmless error standard are separate inquiries.  The <u>Trimiar</u> factors are guides for the ALJs and the district courts to help them determine whether the jobs number is significant.  <u>See</u> <u>Trimiar</u>, 966 F.2d at 1330.  When an ALJ notes those factors on the record, it is clear the ALJ did his or her job by considering whether the regionals jobs number is significant.  The Court has concluded those factors are not helpful in considering the national jobs numbers and that the Tenth Circuit does not require those factors to be considered when the national jobs number is at issue.  <u>See</u> <u>supra</u>, at 18-19.  Thus, it would not be reversible error for the ALJ to forego considering those factors on the record for the national jobs number.  That conclusion does not mean, however, that the ALJ does not have to make a determination on the record about the significance of the national jobs number.

The harmless error test, in contrast, turns on whether a reasonable factfinder could come out the other way.  <u>See</u> <u>Allen v. Barnhart</u>, 357 F.3d at 1144.  Such an inquiry does not require the Court to consider the <u>Trimiar</u> factors.  <u>Trimiar</u> could be helpful to the Court's harmless error analysis in that it gives ALJs and the courts common criteria by which to analyze whether the jobs numbers are significant.  Nevertheless, in a world where <u>Trimiar</u> does not exist or does not apply, the Court can and must still analyze whether a reasonable factfinder could come out the other way, because the Tenth Circuit has not retreated from its harmless error precedent.  <u>See</u> <u>Bainbridge v. Colvin</u>, 618 F. App'x at 391.

In short, the <u>Trimiar</u> factors are guides to determine a job number's significance.  In contrast, harmless error asks whether any rational factfinder could conclude a jobs number is insignificant.  That an aid in determining significance has been chopped back, does not mean that the latter inquiry is no longer operative.  If Magistrate Judge Molzen's PFRD suggests that the harmless error inquiry can be skipped, because <u>Trimiar</u> has lost its force, the Court determines that there is insufficient evidence for that conclusion.

numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(c)(2)(A). Based on the statute's language, the Court foresees situations where a rational factfinder could conclude that 50,000 is not significant. For example, consider a claimant who lives in Biloxi, Mississippi, and qualifies for a job, but that job has a strong concentration in one region, perhaps Los Angeles, California, with 45,000 jobs there but only a smattering of jobs throughout the rest of the United States.[12] If the ALJ determined that such a factual scenario demonstrated that the national jobs' numbers were insignificant, the Court would not be inclined to say that the ALJ was an irrational factfinder, or that he or she was wrong as a matter of law.[13] As a result, the Court concludes that remand is appropriate. Accordingly, the Court adopts Magistrate Judge Molzen's PFRD in part and does not adopt it in part, and grants in part and denies in part Sears' Motion.

　　**IT IS ORDERED** that: (i) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed February 21, 2018 (Doc. 26), is adopted in part; (ii) the Plaintiff's Motion to Reverse or Remand Administrative Agency Decision and Memorandum Brief, filed August 22,

---

[12]Jobs associated with the movie industry plausibly fit this scenario.

[13]The Court notes some potential tension in its reasoning and Tenth Circuit caselaw. Consider, for example, the same hypothetical but with 147,000 jobs in Los Angeles and 5,000 more scattered throughout the United States; such a hypothetical would suggest that a rational factfinder could conclude that the jobs number was not significant and that Stokes v. Astrue was wrongly decided. See 274 F. App'x at 684. The limiting principle that the Court perceives is that, the higher the number of national jobs, the less likely that there would be a lopsided distribution of those jobs throughout the United States. The Tenth Circuit's harmless error test suggests that this limiting principle is appropriate, as the test requires the Court to consider its confidence level that no reasonable factfinder "could have resolved the factual matter in any other way." Allen v. Barnhart, 357 F.3d at 1145. At only 50,000 national jobs, the Court is less confident that no reasonable factfinder could have resolved the matter differently than if the jobs at issue were 152,000. Accordingly, it concludes that remand is appropriate.

2017 (Doc. 16), is granted in part and denied in part; and (iii) the Court will remand the case to

the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Justin S. Raines
Caraway, Tabor & Byers, L.L.P.
Carlsbad, New Mexico

     *Attorney for the Plaintiff*

John C. Anderson
   United States Attorney
Manuel Lucero
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

-- and --

Jennifer Ann Randall
Melissa Schuenemann
Social Security Administration
Denver, Colorado

     *Attorneys for the Defendant*